**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JAMES M. WATSON,

*Plaintiff*,

v.

HIWINGO LTD. et al.,

*Defendants*.

Case No. 1:26-cv-00375-BL-SMD

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND
RESPONSE TO PLAINTIFF'S ANTICIPATORY OPPOSITION BRIEF**

Pursuant to the Convention Act, 9 U.S.C. §§ 201–208 and the Convention on

the Recognition and Enforcement of Foreign Arbitral Awards, Defendants Hiwingo

Limited ("Hiwingo") and Jackpot Go[1] (collectively, "Defendants") move to compel

Plaintiff James M. Watson to submit his claim to binding, individual arbitration and

to stay this action pending the resolution of the dispute in arbitration.

**INTRODUCTION**

When customers create an account on Hiwingo's free-to-play online social

gaming platform, Jackpot Go, they agree to arbitrate any disputes relating to the

platform on an individual basis. Plaintiff acknowledges as much in his Complaint,

---

[1] As explained in Defendants' Notice of Removal, Jackpot Go is a brand name associated with Defendant Hiwingo Ltd. and has no separate legal existence. To the extent the Court does not disregard Jackpot Go, it would be entitled to the same relief as Hiwingo.

1

conceding that he created an account and that the Jackpot Go terms and conditions, which include the arbitration agreement, are a "valid contract." (Compl. ¶¶ 9, 29.)

Like all customers, Plaintiff could have opted out of the arbitration agreement. All he had to do was send a short email to Hiwingo within thirty days of creating his account. He chose not to. The Court should therefore reject Plaintiff's belated attempt to avoid arbitration, including the arguments set forth in his Opposition to Defendants' Anticipated Motion to Compel Arbitration ("Ant. Brf.") (Dkt. No 6.) Besides being procedurally improper, Plaintiff's brief establishes no defense to enforcement of the arbitration agreement contained within the parties' valid contract. Because the parties agreed to arbitrate not only the merits of Plaintiff's claim, but all questions of arbitrability, the Court must compel arbitration under the Convention and the Convention Act.

## BACKGROUND AND PROCEDURAL HISTORY

Hiwingo operates a free-to-play online social gaming platform, Jackpot Go. (Declaration of William Burns ("Burns Decl.") ¶ 6.). Only customers who create an account may access and play the games on the platform. (*Id.* ¶ 11.)

To create an account, customers must accept the platform's Terms & Conditions ("Terms") and Privacy Policy through a clickwrap agreement. (*Id.* ¶ 12.) New users accept the Terms by checking a box confirming that he or she agrees to the platform's Terms and Privacy Policy. (*Id.*) As illustrated below, the Terms and

2

Privacy Policy are made immediately available to the user through a hyperlink. If a user fails to check the box confirming that he or she agreed to the Terms and Privacy Policy, the platform does not allow the individual to proceed further in the account-creation process. (*Id.* ¶¶ 12-13.)  Users who do not affirmatively accept the Terms are not permitted to access or play the platform's games. (*See id.*)



*Image 1 - Registration Screen*[2]

Plaintiff created a Jackpot Go account on September 13, 2025. (Burns Decl. ¶ 10; *see* Compl. ¶ 9.) As Plaintiff acknowledges, in doing so, he agreed to the Terms as outlined above. (*See* Compl. ¶ 29.) And as Plaintiff also acknowledges, those Terms, which include an arbitration agreement, are a "valid contract." (*Id.*)

Despite agreeing to resolve disputes with Hiwingo in arbitration, Plaintiff filed the Complaint in the Houston County Circuit Court on April 8, 2026. (*See* Notice of Removal ("NOR") ¶ 5, Dkt. No. 1.) Plaintiff brings claims for breach of

---

[2] Burns Decl., Ex. A.

67913408 v1

contract, negligence, unjust enrichment, and violations of the Alabama Deceptive Trade Practices Act. (Compl. ¶¶ 28–40.) The factual allegations supporting each claim are the same: that Hiwingo has wrongfully withheld sweepstakes winnings of over $7 million to which Plaintiff believes he is entitled. (*See id.* ¶¶ 9–27.) While Hiwingo denies Plaintiff's allegations, this Court is not the proper forum to resolve the parties' dispute. Instead, Plaintiff and Defendant agreed that they would resolve all disputes related to the platform through binding, individual arbitration.

The Terms make this clear. They immediately notify users, under the heading "**IMPORTANT NOTICES**," that the Terms include an arbitration agreement and class action waiver, direct users to the relevant section of the Terms (Section 17) and inform users of their right to opt out. (Terms at 1.) When the user scrolls down to Section 17, the Terms again call attention to the arbitration agreement, directing users to "**PLEASE READ THIS ARBITRATION & CLASS ACTION WAIVER.**" (Terms § 17.) Then, in capitalized letters, Section 17 alerts users to the arbitration agreement and their right to opt out:

> THIS AGREEMENT INCLUDES AN ARBITRATION PROVISION WHICH SETS FORTH HOW PAST, PENDING OR FUTURE DISPUTES BETWEEN YOU AND Hiwingo SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS ONLY AND FOR YOUR OWN LOSSES ONLY.

(*Id.*) Users who choose not to opt out agree to arbitrate "any past, pending, or future dispute, claim or controversy arising out of or relating to any purchase or transaction

4

67913408 v1

by you, your access to or use of any Platform or the Service, or to this Agreement,
the Terms of Services, or Privacy Policy." (*Id.* § 17.2.)

Further, the parties agree to "delegate to the Arbitrator the exclusive
jurisdiction to rule on their own jurisdiction . . . including any objections with respect
to" "scope, validity, enforceability, or severability," "as well as the arbitrability of
any claims . . . ." (*Id.* § 17.2.) The agreement calls for arbitration to be administered
by JAMS under its Comprehensive Rules, (*see id.* § 17.9).

Hiwingo does not mandate that users agree to arbitrate. To the contrary,
Hiwingo encourages its customers to carefully consider the decision to agree to
arbitrate and to consult with counsel. (*Id.* § 17.14.)  Users therefore have a choice:
they may accept the arbitration agreement or opt out. To opt out, a new user must
simply email written notice to Hiwingo within thirty days of entering into the
agreement. (§ 17.13.) Defendant has no record of receiving an opt-out notice from
Plaintiff, and the time for him to opt out expired months before he filed the
Complaint. (Burns Decl. ¶¶ 21–23.)

On May 13, 2026, Defendants removed this action from the Circuit Court of
Houston County, Alabama under 9 U.S.C. § 205 and 28 U.S.C. §§ 1441, 1446. (*See*
Notice of Removal, Dkt. No. 1.) Five days later, Plaintiff filed an anticipatory Brief
in Opposition to Defendants' Anticipated Motion to Compel Arbitration (Ant. Brf.).
(Dkt. No. 6.) Contrary to Plaintiff's assertion, Defendants did not remove the action

5

67913408 v1

after Plaintiff filed an application for default judgment. Plaintiff filed his application in the Circuit Court at 3:19 p.m. (Ant. Brf. at 3.) As the Notice of Electronic Filing demonstrates, Defendants filed the Notice of Removal in this Court at 2:56 p.m. In accordance with Federal Rule of Civil Procedure 81(c)(2)(C), Defendants now file this Motion seven days after filing their Notice of Removal.

## **LEGAL STANDARD**

The Federal Arbitration Act makes arbitration clauses in contracts "evidencing a transaction involving commerce . . . valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2; *Title Max of Birmingham, Inc. v. Edwards*, 973 So. 2d 1050, 1053 (Ala. 2007) (noting that the FAA preempts Alabama law making pre-dispute arbitration agreements unenforceable). The FAA embodies a federal policy favoring arbitration, a policy that applies with "special force" where a party seeks to compel arbitration under the Convention, as implemented by the Convention Act. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

The Convention requires courts in signatory countries like the United States to, "at the request of one the parties, refer the parties to arbitration." Convention, art. II(3), 21 U.S.T. 2517, 1970 WL 104417. When a party seeks to compel arbitration under the Convention, courts conduct a "very limited inquiry" into whether the

Convention applies. *See Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005). In conducting this inquiry, courts must determine only whether: (1) there is an agreement in writing; (2) the agreement provides for arbitration in a signatory country; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *Id.* at 1294 n.7. If the answer to all four questions is yes, the court must compel arbitration unless it finds that the arbitration agreement is "null and void, inoperative or incapable of being performed." *See Bautista*, 396 F.3d at 1301.

## ARGUMENT

### I.   The arbitration agreement is valid and enforceable under the Convention and the Convention Act.

The Convention and Convention Act govern the arbitration agreement because the Terms are an agreement in writing within the meaning of the Convention, the arbitration agreement provides for arbitration in a signatory country, the United States, the arbitration agreement arises out of a commercial legal relationship, and a party to the agreement, Hiwingo, is not a citizen of the United States.

### A.   Plaintiff is bound by a written arbitration agreement that provides for arbitration in a signatory country.

Starting with the first two requirements, the Terms and arbitration agreement are written agreements between Hiwingo and its customers, including Plaintiff, and

67913408 v1

provide for arbitration in the United States, a signatory to the Convention. Courts apply ordinary state-law principles to determine whether the parties formed an agreement, but in doing so, must still "take[] into account" the "federal policy favoring arbitration." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). Under Alabama law, a contract requires an offer and an acceptance, consideration, and mutual assent to the contract's terms. *Ex Parte Riverfront, LLC*, 129 So.3d 1008, 1013 (Ala. 2013). Despite Plaintiff's contention in his Anticipatory Brief, as outlined below, each element is present here.

To start, there was both an offer and an acceptance. Hiwingo's offer is straightforward: it disclaims its right to pursue litigation in exchange for Plaintiff's promise to do the same. When Plaintiff created an account, he took an affirmative step to accept Hiwingo's offer. Specifically, he checked a box confirming that he agreed to the Terms. *See Ex parte The HuffingtonPost.com, Inc.*, 376 So. 3d 432, 449 (Ala. 2022) (recognizing the enforceability of online terms and conditions when website visitor clicked a "pop up" box indicating that she had read and assented to the agreement). By doing so, Plaintiff accepted the arbitration agreement subject to the right to opt out within thirty days. *See id.* He then let the time to opt out expire, further indicating that he accepted Hiwingo's offer. The process by which Plaintiff accepted the Terms therefore reflects the elements of offer and acceptance. *See id.*

8

67913408 v1

The arbitration agreement is also supported by consideration. Consideration may take the form of an act, forbearance, detriment, "destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." *Family Sec. Credit Union v. Etheredge*, 238 So. 3d 35, 40 (Ala. 2017). Forfeiting the right to a jury trial by agreeing to pursue arbitration is adequate consideration to support an agreement to arbitrate. *See Ex Parte Bill Heard Chevrolet, Inc.,* 927 So. 2d 792, 802 (Ala. 2005). Because both Plaintiff and Defendant agreed to resolve disputes in arbitration, forgoing their right to a jury trial, (Terms §§ 17, 18), the arbitration agreement is supported by adequate consideration. *Id.*

Finally, because Plaintiff accepted the Terms and the arbitration agreement within them when he created a platform account, mutual assent exists between the parties. While mutual assent is typically manifested by signature, it may also be "inferred from other external and objective manifestations of mutual assent." *I.C.E. Contractors, Inc. v. Martin & Cobey Constr. Co.*, 58 So. 3d 723, 725–26 (Ala. 2010). When a customer creates an account, the platform alerts the customer to the existence of the Terms and provides a link that, if clicked, would display the Terms in their entirety. (Burns Decl., Ex. A.) Whether Plaintiff took the opportunity to read the Terms or not, he manifested assent by checking the box indicating that he accepted the Terms and creating an account. *I.C.E. Contractors*, 58 So. 3d at 725–26; *see Humphrey v. Equifax Information Servs., LLC*, 2024 WL 5247164, at *3–4

67913408 v1

(N.D. Ala. Dec. 30, 2024) (enforcing arbitration agreement where arbitration agreement accessible by hyperlink along with other terms of use).

Not only that, but Defendant also offered Plaintiff the opportunity to opt out of the arbitration agreement—an opportunity Plaintiff has chosen to forgo. While an arbitration agreement need not contain an opt-out provision to be valid under Alabama law, Plaintiff's decision not to opt out further signals his "ratification" of— and assent to—the arbitration agreement. *Carusone v. Nintendo of Am.*, No. 5:19-cv-01183-LCB, 2020 WL 3545468, at *5 (N.D. Ala. Jun. 30, 2020).

**B. The arbitration agreement arises out of a commercial legal relationship and one of the parties to the agreement is a foreign citizen.**

Next, the arbitration agreement arises out of a commercial legal relationship. Under the Convention, "commercial" relationships include those "contracts evidencing a transaction involving commerce" within the scope of section 2 of the FAA. *See* 9 U.S.C. § 202. Courts interpret the phrase "involving commerce" broadly; it is the "functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted). The Convention Act, like the FAA, therefore applies to contracts that would, "in the aggregate," have a "substantial effect on interstate commerce." *Id.* at 56–57.

10

The Terms satisfy this requirement. They create and govern the relationship between Plaintiff and Hiwingo, allowing Plaintiff to access and make purchases on the Jackpot Go platform. (*See* Burns Decl. ¶ 9–14.) Thus, the parties' legal relationship is "commercial" for the purposes of the Convention Act. *See McKay Bldg. Co., Inc. v. Juliano*, 949 So. 2d 882, 885–86 (Ala. 2006) (transaction involved commerce where party did business outside of Alabama); *Spears v. Bay Inn & Suites Foley, LLC*, No. 1:19-00269-C, 2021 WL 2445889, at *4 (S.D. Ala. Jun. 15, 2021) (recognizing internet as instrumentality of interstate commerce).

Finally, because Defendant is a United Kingdom limited company with its principal place of business in the United Kingdom one of the parties to the arbitration agreement, Defendant is a foreign citizen. 9 U.S.C. § 202; *see Marubeni Corp. v. Mobile Bay Wood Chip Ctr.*, No. Civ. 02-0914, 2003 WL 22466215, at *9 (S.D. Ala. Jun. 16, 2003) (Convention governs where party to arbitration agreement was a non-U.S. company with a non-U.S. principal place of business).

Because the arbitration agreement satisfies all four requirements, the Convention and the Convention Act govern.

## II.   The Court must compel Plaintiff to submit his claims to arbitration.

Because the Convention and the Convention Act govern, the Court must refer the parties' dispute to arbitration unless it is "null and void, inoperative, or incapable of being performed." Convention, art. II(3). As Plaintiff acknowledges, the Terms,

11

which include the arbitration agreement, are a "valid contract." (Compl. ¶ 29.) Accordingly, the Convention requires the Court to compel Plaintiff to submit his claims to arbitration. Should Plaintiff attempt to reverse course and challenge the validity of the Terms and the arbitration agreement within them, the clear and unmistakable delegation provision would require the Court to refer those challenge to the arbitrator.

### A. The parties delegated all arbitrability, validity, enforceability, and scope disputes to the arbitrator.

Along with agreeing to arbitrate the merits of their disputes, the parties also agreed that the arbitrator—not the Court—would decide threshold issues of arbitrability. The Court must therefore refer any validity, arbitrability, enforceability, or scope challenge to the arbitrator.

Courts generally decide "threshold issues" of arbitrability unless the parties have "clearly and unmistakably agreed to delegate questions of arbitrability to the arbitrator." *Attix v. Carrington Mtg. Servs., LLC*, 35 F.4th 1284, 1296 (11th Cir. 2022) (quoting *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 70–71 (2019)). The parties may demonstrate their clear and unmistakable intent to delegate questions of arbitrability by including an express delegation clause, *see id.*, or by incorporating rules that give the arbitrator power to decide such questions, *see JPay, Inc. v. Kobel*, 904 F.3d 923, 927 (11th Cir. 2018).

12

Here, the parties have done both. First, the parties agreed that the arbitrator would have "the exclusive jurisdiction to rule on their own jurisdiction . . . including any objections with respect to" "scope, validity, enforceability, or severability," "as well as the arbitrability of any claims." (Terms § 17.2.) *See Johnston v. VGW Holdings Ltd.*, No. 3:25-cv-653-RAH, 2026 WL 699708, at \*3 (M.D. Ala. Mar. 12, 2026) (similar language constitutes the "typical type of delegation language regularly enforced by courts"). Second, the parties agreed to arbitrate under JAMS' Comprehensive Rules, which grant the arbitrator authority to resolve "[j]urisdictional and arbitrability disputes," including formation, existence, validity, interpretation or scope disputes. JAMS Rule 11(b). This too confirms that the parties intended to delegate questions of arbitrability to the arbitrator. *See Johnson*, 2026 WL 699708, at \*3–4 (citing *JPay, Inc.*, 904 F.3d at 937).

Because the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator, the Court must respect that decision and refer any arbitrability challenge to arbitration.

### B. The Court would be required to compel arbitration even if the parties had not delegated enforceability and scope disputes to the arbitrator.

Even in the absence of this clear and unmistakable delegation, the Court would still be required to compel Plaintiff to arbitrate because the arbitration agreement is valid and enforceable under the Convention and it encompasses Plaintiff's claim.

13

67913408 v1

Because the Convention governs the arbitration agreement, the Court must enforce it unless one of the limited defenses available under the Convention applies. The Court may only decline to enforce the arbitration agreement if it is "null and void, inoperative or incapable of being performed." *Bautista*, 396 F.3d at 1296, n.9. As used in the Convention, the phrase "null and void" refers only to those defenses "that can be applied neutrally on an international scale," such as fraud, mistake, duress, and waiver. *Id.* at 1302 (citing *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000)). Plaintiff does not suggest that any such defense applies here, even in his preemptive "Opposition." Indeed, he acknowledges that the parties formed a valid contract. (Compl. ¶ 29.) Accordingly, none of the Convention's narrow defenses to enforcement apply, and the Court must compel arbitration.

Nor can Plaintiff show that this dispute falls outside of the arbitration agreement's scope. Plaintiff misconstrues the scope of the parties' arbitration agreement in his Anticipatory Brief. The arbitration agreement is not limited to "contractual disagreement[s]." (Ant. Brf. at 6.) It covers "any past, pending, or future dispute" that arises out of or relates to any of Plaintiff's purchases, transactions, use of, or access to the Jackpot Go platform. *See Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327 (M.D. Ala. 2014) (arbitration agreement that applied to "any dispute" encompassed statutory claims). But even if the arbitration agreement were

14

limited to contract claims, it would still apply because Plaintiff grounds each of his claims in Defendants' alleged breach of the Terms. (*See* Compl. ¶¶ 28–38.)

Finally, Hiwingo has not waived its right to arbitration. Before filing this Motion, Defendants did nothing but file a Notice of Removal. This falls far short of so "substantially invoking the litigation machinery" that it amounts to waiver of the right to arbitration. *Goff Grp., Inc. v. Greenwich Ins. Co.*, 231 F. Supp. 3d 1147, 1154–55 (M.D. Ala. 2002) (removal does not waive right to arbitration).

Plaintiff agreed to submit his claims to arbitration. He chose instead to file suit in the state court. Federal law expressly permits removal for the purpose of compelling arbitration, *see* 9 U.S.C. § 205, and that is precisely what Defendants have done.

## III.   The Court should stay proceedings pending the outcome of arbitration.

Because all of Plaintiff's claims must be resolved in binding, individual arbitration, the Court should stay this action. Under the FAA, the Court "shall on application of one of the parties stay the trial of the action until [the] arbitration has concluded." 9 U.S.C. § 3. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also* 9 U.S.C. § 208 (applying FAA to Convention Act cases to the extent statutes do not conflict). Hiwingo therefore respectfully requests that the Court stay all proceedings in this action pending the outcome of arbitration.

## CONCLUSION

15

67913408 v1

For the foregoing reasons, Defendants respectfully request that the Court compel arbitration of Plaintiff's claim and stay this action pending resolution of the dispute in arbitration.

16

Dated: May 20, 2026

Respectfully submitted,

*/s/ Forrest S. Latta*_____
Forrest S. Latta (LATTF0526)
Gerald P. Gillespy (GILLG3726)

**BURR & FORMAN LLP**
11 N. Water Street, Suite 22200
Mobile, AL 36602
Tel: (251) 344-5151
Fax: (251) 344-9696
Email: flatta@burr.com

420 North 20th Street
Suite 3400
Birmingham, AL 35203
Tel: (205) 251-3000
Fax: (205) 458-5100
Email: ggillespy@burr.com

George R. Calhoun, V*
Kim Conroy*
Katherine Kovalsky*
Robert W. Ward*
**IFRAH PLLC**
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Tel: (202) 524-4140
Fax: (202) 524-4141
Email:  george@ifrahlaw.com
       kconroy@ifrahlaw.com
       kkovalsky@ifrahlaw.com
       rward@ifrahlaw.com

*Counsel for Defendants*

\* *pro hac vice forthcoming*

17

67913408 v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of May, 2026, I caused the Defendants'

Motion to Compel Arbitration and Declaration in Support to be filed via the Court's

electronic filing system, which will transmit a notice of electronic filing to all

counsel of record. I further certify that I served a true and correct copy of the same

to all parties not participating in the Court's electronic filing system via first-class

U.S. Mail to the following:

James M. Watson
200 Sweetwater Drive, Apartment B27
Dothan, AL 36305
Email: Smilesarefree123@icloud.com
*Pro se Plaintiff*

/s/ Forrest S. Latta
Forrest S. Latta
*Counsel for Defendants*