RECEIVED

2026 MAY 29 A 11: 11

TREY...
U.S. DIST...

## U.S DISTRICT COURT

## ALABAMA MIDDLE DISTRICT (DOTHAN)

**JAMES WATSON ,**

      Plaintiff,

vs.

**HIWINGO LTD., AND JACKPOT GO,**

      Defendant

Case No.: **1:26-cv-00375**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

## INTRODUCTION

I, James Watson, Plaintiff, file this Opposition of Defendants' motion to compel arbitration. Defendants' reliance on arbitration is improper. Defendants have failed their own set forth terms to arbitrate through their conduct and, in any event, have failed to establish that a valid and enforceable arbitration agreement exists or governs this dispute. Plaintiff, myself, never consented to the terms of service submitted to the courts by the defendants.  The terms and service presented by defendants was altered pre-dispute in which I was never notified nor did I consent to the terms in their July 2025 and December 2025 submissions to the court.  The defendants froze my account in January 2026 due to ongoing dispute. II was never able to use or consent to the May 13, 2026, terms of service in which the defendants submitted to the court.

This opposition will provide evidence and details to further explain why no arbitration agreement exists between myself and the defendants. If the defendants argue there is a valid and enforceable arbitration agreement, then the defendants will need to explain to the courts why they intentionally altered the agreement to manipulate the courts decision towards their desired

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION  - 1

outcome because the changes made reflect no typographical error but suggest intentional post-dispute upper hand arguments for the defense.  However, the pre-dispute arbitration agreement presented to the courts by the defendants suggests consistency with the post-dispute terms of service, but were never known to and lack assent/consent/signature by the plaintiff, myself.

## STATEMENT OF FACTS

### A. The Jackpot Event

On October 22, 2025, Plaintiff engaged in gameplay on Defendants' platform, "Jackpot Go." During this gameplay, all three jackpot reels aligned as:

**"Jackpot – Jackpot – Jackpot."  = Jackpot (SC)**

The game's pay-table explicitly indicated that such a combination resulted in a jackpot payout as stated on platform of $7,119,541.00 in in-game currency (SC). One SC (sweep coin) is equivalent to one US dollar.  Prior to this event, Plaintiff had verified identification and location and successfully redeemed funds from the platform without issue (Exhibit A1).

### B. Immediate Contact and Denial

Immediately following the jackpot event, I , the Plaintiff,  contacted Jackpot Go's in-app customer service to initiate redemption. Customer service acknowledged the request and directed the matter to the "redemption team" (Exhibit B1). Within approximately 24 hours, the redemption team responded and denied the payout.

Defendants stated that despite the reels aligning, the blue lights had to appear and "blue lights did not appear" (Exhibit C1). The pay-table contained no such requirement of blue lights, and no such condition had been disclosed to Plaintiff prior to or during gameplay.

## C. Demand Letter and Defendants' Silence

In December 2025, Plaintiff sent a formal demand letter to Defendants at the addresses listed on their website (Exhibit D1-D2). In January 2026, Plaintiff also submitted the demand through Defendants' in-app support system. Defendants responded by confirming (Exhibit E1):

- **Receipt of the demand letter**

- **That the matter had been forwarded to their legal department**

After this acknowledgment, Defendants ceased all communication with plaintiff. However, the defendants' did change the format of the game pay-table to (Exhibit F1):

**"Jackpot – Jackpot – Jackpot." = "Bonus Game."**

From January 2026 through April 2026, Plaintiff made multiple attempts to follow up. Despite Plaintiff's repeated attempts to resolve this matter, the defendants intentionally neglected to engage in any meaningful effort to address the dispute but addressed their perceived issues as evidenced by the fact that they changed the platform to reflect a different

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION - 3

pay-table. Exhibit F2 provided is of a pay-table chart comparison.

**D. Filing of Lawsuit and Default Efforts**

On April 8, 2026, Plaintiff was left no choice but to file a civil complaint in the Circuit Court of Houston County, Alabama, where the win took place, due to the lack of communication and lack of any efforts of Defendants' to resolve this matter. Defendant Jackpot Go and Hiwingo Ltd were served with process. After Defendants failed to respond within the required time frame of 30 days, down to the hour, the Plaintiff, myself, was again forced to proceed forward with the next step of the legal process. At that time, I, the plaintiff, was unaware that the court proceeding were timed by the day. Therefore, on **May 13, 2026, at approximately 3:19 PM, Plaintiff filed an Application for Entry of Default Judgment.**

**E. Removal Immediately After Default Filing**

On May 13, 2026, at approximately 3:35 PM—just minutes after Plaintiff, myself, filed for default relief—Defendants' legal counsel filed a Notice of Removal to federal court. This marked Defendants' first substantive contact following months of silence.

**F. Absence of Arbitration Invocation**

In the Defendants' own document submitted to the courts it states:

- *"15.3 30 Days Limitations Period. You and Hiwingo agree that any claims, regardless of form, arising out of or related to the Site*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION  - 4

*(including Services) or these Terms of Services or Privacy Policy must BE FILED within THIRTY (30) DAYS of the action, omission, event or occurrence giving rise to the claim or suit, after which such claims will be time-barred and prohibited, without regard to any longer period of time which may be provided by any period of limitation or repose by law or statute."*

Their own words state that they acted inconsistently and acted in silence and avoided any time frames they set forth in their own submitted agreement and are now trying enforce those terms upon plaintiff, myself.  At **_NO_** point prior to since reporting dispute to the defendants until removal (total of six months) did Defendants:

- **Mention arbitration during customer service interactions**
- **Invoke arbitration during the redemption dispute**
- **Raise arbitration in response to the demand letter**
- **Attempt to resolve with arbitration proceedings**

Even though the Plaintiff, myself, attempted many times to resolve this dispute as described within this motion.

## LEGAL STANDARD

Upon research, I, plaintiff, found that a party can forgo its right to arbitration when it knows of that right and act-inconsistently with it. *Please* See *Morgan v. Sundance, Inc.*

Even if I, plaintiff, and the defendants did had a valid arbitration agreement, the focus is

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION - 5

on whether the **party's conduct demonstrates an intentional relinquishment of the arbitration right as the defendants' conduct has since October 22, 2025.**

## ARGUMENT

### A. Defendants failed to comply with their own mandatory provision procedures

Defendants had full knowledge of any alleged arbitration rights, as such provisions would exist within their own terms and conditions. Despite this, Defendants engaged in conduct wholly inconsistent with an intent to arbitrate. Defendants seek to compel arbitration pursuant to the Terms of Service while disregarding the very dispute-resolution procedures that they drafted and made mandatory. Their submitted Terms of Service Section 16.7 provides that upon receipt of a complaint, Defendants will respond in writing or coordinate and schedule a telephone or videoconference within forty-five (45) days after receipt of the notice of dispute.

#### 1. Failure to Invoke Arbitration During the Dispute

At no time did Defendants raise arbitration as a required forum for pre-dispute resolution even though they were well aware of the issue and their terms of service has strict requirements.

#### 2. Ignoring a Formal Legal Demand

After receiving Plaintiff's demand letter and acknowledging that it had been forwarded to their legal department, Defendants intentionally neglected to respond. Their terms of service Section 16.8 further requires the parties to use their best efforts to settle any dispute and engage in good-faith negotiations as a condition precedent to initiating

arbitration. Defendants did not engage.  Plaintiff provided Defendants with notice of the dispute regarding the October 22, 2025 jackpot and later caused a formal demand letter to be sent. Defendants acknowledged receipt of the claim and represented that the matter had been forwarded to their legal department. Despite receiving notice, Defendants did not schedule the conference contemplated by their terms of service Section 16.7, did not engage in the good-faith negotiations required by their own terms of service Section 16.8, and did not make any meaningful effort to resolve the dispute. Instead, Defendants remained silent for months and only asserted arbitration after litigation commenced.

### 3. Prolonged Silence

Defendants remained silent for several months despite ongoing attempts by Plaintiff to resolve the dispute.

### 4. Strategic Invocation Only After Litigation Pressure

TOS Section 16.9 expressly provides that applicable limitation periods are tolled during the informal dispute-resolution process. Defendants cannot rely upon contractual deadlines or procedural defenses while simultaneously failing to participate in the dispute-resolution process that would trigger those provisions. Any delay resulting from Defendants' failure to engage in the required conference and negotiations should not be charged against Plaintiff. Defendants only acted after Plaintiff sought default judgment, at which point they removed the case to federal court and attempted to rely on arbitration.

**B. Defendants' Conduct Constitutes Waiver**

According to my research, Defendants' action constitute waiver under federal law. Courts routinely find waiver where a party delays asserting arbitration and instead engages in litigation strategy or *ignores pre-suit dispute resolution efforts.*

**C. No Valid Arbitration Agreement Has Been Established**

Defendants have failed to demonstrate that the Plaintiff agreed to arbitration, the specific terms governing arbitration, or that such terms were presented and accepted. The terms of service submitted to the courts by the defendants' was not mutually agreed to, was used by the defendants' to manipulate the courts and persuade-their motion to compel arbitration (will discuss further in section D). Plaintiff's account was frozen by Defendants in or around January 2026. Therefore, Plaintiff could not have accepted the May 13, 2026, Terms through continued use, continued access, or continued participation on the platform. Defendants cannot rely on post-dispute terms allegedly accepted by continued use when Defendants themselves prevented Plaintiff from accessing or using the account before those terms were posted (Exhibit G1).

**D. Material Discrepancies Exist Regarding the Contents of the Alleged Arbitration Agreement**

Plaintiff, myself, possesses a screenshot obtained directly from Defendants' website on November 26, 2025, showing language materially different from the arbitration-related language relied upon by Defendants. Specifically, Plaintiff's November 26, 2025

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION  - 8

screenshot reflects terms of service Section 20.2 referenced Section 15 rather than Section 17 (Exhibit H1). Defendants, however, rely upon a Version 9.0 Terms of Service document allegedly effective July 29, 2025, in which Section 20.2 references Section 17. Defendants also rely upon a Version 11.0 Terms of Service document allegedly effective on December 5, 2025, in which TOS Section 20.2 references Section 17. Plaintiff has further observed that a later Version 12.3 published on May 13, 2026, again references Section 17. Accordingly, the relevant language appears to have consistent Sections 20.2 with reference to 17. Defendants have provided no explanation for this discrepancy. **This discrepancy is material because Section 15 and Section 17 govern entirely different legal rights and obligations.** Section 15 contains significant limitations on claims and remedies, including a thirty-day limitations provision, limitations upon recovery, liability limitations, and other restrictions upon available relief. Section 17 contains the arbitration agreement itself, including delegation provisions, class-action waivers, Delaware choice-of-law provisions, venue provisions, arbitrator authority provisions, and procedures governing arbitration. Because the disputed language directly concerns the rights asserted by Defendants in support of arbitration, Plaintiff respectfully submits that Defendants have failed to establish with certainty the contents of the operative agreement allegedly governing Plaintiff's account. It is uncertain at this time if any other changes have been made to the document. . .

**E The Discrepancy Directly Impacts the Arbitration Issues Presented to the Court**

The discrepancy concerning whether their terms of service Section 20.2 referenced Section 15 or Section 17 is **_not_** a mere typographical error. Their July 2025, December

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION - 9

2025, and May 13, 2026 all match.  Except for the screenshot that I, the plaintiff, took on my phone after the disputes continued to be unresolved.  It appears that the defendants' went back and formulated a new agreement posted on their website at the time of the plaintiffs screenshot.   At either rate it is manipulation with intent and that is my observation being that the changes in referenced sections address substantially different legal subjects. A reference to Section 17 directs users to the arbitration agreement and arbitration procedures. A reference to Section 15 directs users to provisions governing liability limitations, damages restrictions, limitations periods, and available remedies. Because Defendants seek to compel arbitration based upon the provisions contained within Section 17.  The distinction between Section 15 and Section 17 is directly relevant to the issues presently before the Court.  **Plaintiff respectfully submits that Defendants' reliance upon a an altered version favorable to their present arbitration position, while evidence from Defendants' own website on November 26, 2025, reflects different language, creates substantial uncertainty regarding the operative terms and warrants careful scrutiny by the court and appears to be an intentionally altered typographical tactic of persuasion used to manipulate the court's decision towards their desired outcome.  Even then, this is just one material change in the documentation noted by the plaintiff, myself.  There may or may not be more alterations. This alone creates questionable future evidence's authenticity if presented by defendants since this seems to be a trend in their way to resolved dispute as evidenced by the pay-table payout changed after disputes arose and since their documents submitted to the courts are different than the website itself at time of dispute initiation.  Basically, if the defendants are willing to back date and alter**

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION - 10

their "terms of service" in order to persuade the court, and their website's pay-table after disputes arose, what else would they alter?

## F. The Dispute Does Not Relate to Arbitration

This case arises from:

- A clearly displayed jackpot outcome

- A pay-table representation

- A denial based on an undisclosed condition

This is a dispute grounded in **fraud, misrepresentation, and unjust enrichment**, not a contractual disagreement subject to arbitration.

## G. Defendants' Arbitration Argument is a litigation strategy

Defendants' reliance on arbitration only after default proceedings were initiated demonstrates that arbitration is being used as a litigation tactic, not as a genuine dispute resolution mechanism. If moved to arbitration, the defendants will more than likely state that resolution was limited to 30 days and dismiss this case. This would not be fair justice being that I, the plaintiff, tried to resolve dispute in a timely manner with no engagement from the defendants.

## CONCLUSION

I, the plaintiff, am by no means an attorney. However, I have a Master's Degree in Nursing. I know right from wrong. I would not have continued on this fight for justice by filing a claim had the defendants tried negotiate in some way. I definitely did not

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION - 11

file this claim because I wanted to. This, by far, is the furthest type of issue from my area of expertise, but at this point, I am dumbfounded by the actions of the defendants and their counsel. If I ever considered orchestrating a defense in the manner they have within my profession, it could potentially have fatal outcomes. Fabricating documents and creating a misleading defense is not ethical. I hope that the courts see this with the factual evidence I have provided with the addition of the Defendants knowingly failing to invoke arbitration during the dispute after multiple attempts by plaintiff, myself, to resolve this dispute, ignoring my formal demand letter, and only raising arbitration after Plaintiff, myself, sought default relief. Additionally, Plaintiff, myself, argues Defendants have not proven a valid enforceable arbitration agreement applicable to this dispute. Defendants failed to comply with the contractual pre-arbitration procedures that they drafted and made mandatory. Having failed to participate in the required informal dispute-resolution process, Defendants should not be permitted to enforce arbitration. Lastly, the May 13, 2026, terms of service were updated after Plaintiff's October 22, 2025, dispute arose and after Plaintiff, I, had filed suit. Those Terms of service attempt to apply retroactively to "past, pending, or future disputes," while also imposing a 30-day filing limitation and a 45-day pre-arbitration dispute process. These provisions conflict with each other and create serious questions of enforceability, notice, assent, and unconscionability .

WHEREFORE, Plaintiff respectfully requests that this Court:

    **1. Deny any motion to compel arbitration;**

    **2. Grant such further relief as the Court deems just and proper.**

Dated: May _17_, 2026.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION  - 12

James Watson, Pro Se, Plaintiff

200 Sweetwater Dr,. Apt B27

Dothan, AL 36305

Tel: (334) 714-8632

Email: smilesarefree123@icloud.com

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION  - 13

PRESS FIRMLY TO SEAL




PAPER
POUCH

PRESS FIRMLY TO SEAL

**PRIORITY MAIL EXPRESS**
**FLAT RATE ENVELOPE**
**POSTAGE REQUIRED**

# PRIORITY
# MAIL
# EXPRESS®

## FLAT RATE
## ENVELOPE
NE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP


PS10001000006

EP13F October 2023
OD: 12 1/2 x 9 1/2

FOR DOMEST
PLACE

- Guaranteed
- Guaranteed
- USPS Tracki
  and many int
- Pick up avai
- Domestic sh
  (restrictions
- Signature in

\* Money Back Guar
  select Internationa
  See DMM and IMI

\*\* Insurance does no
   claims exclusions
   http://pe.usps.cor

✝ Money Back Guar

WHEN USED INTERNATIO


E

**UNITED STATES POSTAL SERVICE.**                    *Retail*

## US POSTAGE PAID
## $35.90
Origin: 36303
05/27/26
0124910303-24

### PRIORITY MAIL EXPRESS®

JAMES WATSON                     0 Lb 14.10 Oz
APT B27
200 SWEETWATER DR                **RDC 07**
DOTHAN AL 36305-3217

SCHEDULED DELIVERY DAY: 05/29/26 06:00 PM

| C039 |

SHIP
TO:

OFFICE OF THE CLERK
US DISTRICT COURT MIDDLE DISTRICT *OF A*
1 CHURCH ST  *Ste B-110*
MONTGOMERY AL 36104-4018

**USPS TRACKING® #**



9570 1115 8452 6147 1604 47


STATES
SERVICE.



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; October 2023; All rights reserved.